IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Kaseem Stephens, # 333714, | ) | |
| | ) | |
| | ) | Civil Action No. 6:15-219-BHH-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Warden Cartledge, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

**BACKGROUND**

The petitioner is currently incarcerated at the McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Charleston County Grand Jury in August 2008 for murder (app. 459–60). On March 16–17, 2009, the petitioner was represented at a jury trial by Jason King and Reece Stidham of the Charleston County Public Defender's Office. The petitioner did not testify at trial (app. 227–30). The State was represented by Ninth Circuit Assistant Solicitors Peter McCoy and Kevin Hales. Trial proceeded before the Honorable R. Markley Dennis, Jr., South Carolina Circuit Court Judge. The jury convicted the petitioner of

murder.  The petitioner was sentenced by Judge Dennis to forty years imprisonment with credit for time served (app. 389).

***Underlying Case Facts***

As noted in the South Carolina Court of Appeals opinion affirming the petitioner's conviction and sentence, the underlying facts of this case are as follows.  On the afternoon of March 27, 2007, Sheldon Frasier (the victim) parked his car in a North Charleston neighborhood next to Jamol Greene's truck, and the men conversed with a mutual friend.  Frasier's fiancee, Kimberly Bates, remained in the car.  Soon after Frasier and Bates arrived, a burgundy Cutlass pulled in behind the vehicles, and the petitioner got out.  After arguing briefly with Frasier, the petitioner produced a gun and began firing at Frasier.  Bates briefly exited the car and confronted the petitioner, giving Frasier the opportunity to run away.  After Bates retreated, the petitioner returned to the Cutlass and drove away. Bates located Frasier at a home not far away.  One of the bullets had pierced his neck and severed his carotid artery.  Alive but bleeding profusely, Frasier denied knowing who had shot him.  He died four days later (app. 201–03).

At trial, Bates testified that she described the gunman to police, and as a result, on the day of the shooting, the police presented her with a photographic lineup.  However, she did not recognize any of the men in the lineup (app. 217).

Shortly after the incident, the police located the burgundy Cutlass not far from the scene of the shooting.  Inside it, they found a business card advertising automobile detailing by "Nitty."  The next day, the police learned that the petitioner used the nickname "Nitty" and presented Bates with a second photographic lineup.  She identified the petitioner as the gunman.  Bates also identified the petitioner as the gunman in court during the trial (app. 209, 217–20).

The police also determined the Cutlass belonged to Greene, who provided a written statement.  In his statement and at trial, Greene indicated that the petitioner had

2

taken the Cutlass to wash it, and Greene identified him as the gunman (app. 111-12, 119).

**Direct Appeal**

The petitioner timely sought a direct appeal of his conviction and sentence. Robert Dudek of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal and presented the following issue:

> Whether the court erred by admitting the photographic array containing a "mug shot" of appellant since the probative value of this photographic array was substantially outweighed by its unduly prejudicial effect because of the danger the jury would conclude the police already had appellant's photograph from a prior arrest which severely compromised his right to a fair trial in this case?

(Doc. 21-4 at 4). Assistant Attorney General Brendan McDonald made the final brief of respondent on behalf of the State (doc. 21-5). In an opinion filed June 27, 2012, the South Carolina Court of Appeals affirmed the petitioner's conviction (doc. 21-6). The remittitur was issued on July 13, 2012 (doc. 21-7).

**PCR**

The petitioner filed a *pro se* post–conviction relief ("PCR") application on October 30, 2012, wherein he alleged the following ground of ineffective assistance of counsel: "Counsel failed to request manslaughter rather than murder with mitigating evidence" (app. 391–97). The State filed its Return on April 18, 2013 (app. 398–401).

On May 22, 2013, an evidentiary hearing was held before the Honorable Deadre Jefferson, South Carolina Circuit Court Judge (app. 402). The petitioner was represented at the hearing by William Runyon, Jr. The petitioner and trial counsel Jason King testified at the hearing. In her order of dismissal filed October 22, 2013, Judge Jefferson found that the petitioner failed to establish "any constitutional violations or deprivations" in his adjudication that would require a grant of relief, and denied and dismissed the petitioner's PCR claims with prejudice (app. 457).

***PCR Appeal***

> The petitioner timely served and filed a notice of appeal.  Laura Caudy of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal, and submitted a *Johnson* petition for writ of certiorari. *See Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988) (*per curiam*) ("This Court has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), were followed.").  In the *Johnson* petition, the petitioner's appellate counsel raised the following issue:

> > Whether the PCR court erred by finding trial counsel was not ineffective for failing to advise Petitioner of his fundamental right to testify and that Petitioner freely and voluntarily waived his right to testify where Petitioner testified that trial counsel made the decision he would not testify and where Petitioner suffered prejudice since his testimony would have established an alibi defense?

(Doc. 21-9 at 3).

> The petitioner submitted a *pro se* response to the *Johnson* petition and alleged an additional ground for relief:

> > Whether the PCR court Judge erred pursuant to 17-27-80, requires that the PCR Court make specific findings of fact and conclusion of law. Applicant alleges in his post-conviction relief application on Page (3) Line (11) counsel failed to request manslaughter rather than murder with mitigating evidence!

(Doc. 21-10 at 3).  The petitioner's PCR action concluded when the Supreme Court of South Carolina denied the petition for writ of certiorari on October 8, 2014 (doc. 21-11). The remittitur was issued on October 24, 2014 (doc. 21-12).

## FEDERAL PETITION

On January 20, 2015, the petitioner filed his § 2254 petition (doc. 1).  On April 2, 2015, the respondent filed a motion for summary judgment (doc. 20).  By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 22).  On April 20, 2015, the petitioner filed a response in opposition to the motion for summary judgment(doc. 24).

In his federal petition, the petitioner makes the following claim (verbatim):

**Ground One:**  6th Amendment of United States Constitution:

**Supporting Facts:**  Counsel prejudice applicant by failing to request for a jury charge on law of manslaughter whereby counsel prejudice applicant by failing to request for jury instruct

(Doc. 1 at 5).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Merits*

The petitioner has exhausted both his direct appeal and PCR remedies in this case. The petitioner raised his one ground for relief in his PCR application and in his *pro se* response to the *Johnson* petition on appeal, and the PCR court ruled upon that ground (app. at 393, 453; doc. 21-10). Therefore, the petitioner's claim for relief has been preserved for federal merits review.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

6

> established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

7

*Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

***Ground One***

The petitioner alleges that trial counsel was ineffective for failing to request a jury instruction on voluntary manslaughter (doc. 1 at 5). The PCR court ruled on this issue in full, applying the *Strickland* standard (app. 452) and finding as follows:

> [C]ounsel was not ineffective for failing to request a voluntary manslaughter jury instruction . . . [T]he record reflects counsel requested a voluntary manslaughter instruction and, after argument from both the State and the Defense, the trial court denied his request (Tr. 273:13-277:15). This Court finds counsel provided effective assistance of counsel by requesting a voluntary manslaughter jury instruction during trial. This Court also finds no prejudice resulted from counsel's performance.

(App. 453).

The PCR court did not support its ruling with testimony provided at the evidentiary hearing, as there was none on this issue.[1] Instead the PCR court relied on the actual trial transcript and relevant state law (app. 453 (citing *Ellison v. Parts Distribs., Inc.*, 395 S.E.2d 740, 741 (S.C. 1990) ("[J]ury instructions should be confined to the issues raised by the pleadings and supported by the evidence and where an issue is implicitly suggested by the pleadings and supported by the evidence the trial judge is obligated to instruct the jury concerning it."))). The trial record relied on by the PCR court reflects that the petitioner's trial counsel pursued a jury instruction on voluntary manslaughter:

> MR. KING: Your Honor, I would request voluntary manslaughter.
>
> THE COURT: Based on what?
>
> MR. KING: I believe that when Jamol Greene testified that he testified that the shooter and Mr. Sheldon Frasier got into an argument before the shooting.

---

[1]At the PCR hearing, the petitioner's trial counsel was questioned on the alleged failure to assert an alibi defense (app. 412–14) and on the failure to locate a missing witness (app. 442–44).

9

THE COURT: We don't know what the basis of that argument was. We don't know anything about it. Just every argument, I don't think -- and, more importantly, it's been your position and I guess that's the whole purpose of the testimony, that he wasn't the shooter.

MR. KING: I understand. That's my understanding. But I think that it is possible that the jury could determine that there was an argument which could have been sufficient provocation; that if they believe Mr. Stephens was the shooter, that he really came up on the scene pretty quickly, that it couldn't have been something that was planned because they were just going to visit friends. It happened on the spur of the moment, an argument occurred ---

THE COURT: Except for one thing. This is where it runs amuck and that's why I don't think that -- I don't think that it's there. . . . I don't remember Mr. Greene testifying to the substance of it other than that there was an argument.  So whether or not there was sufficient legal provocation, I don't have any [basis] to rule on that. There is no evidence to support it other than an argument, and we know that every argument doesn't warrant voluntary manslaughter.  Taking what you're said to be the case, if the shot -- if there was some testimony that says that the first shot is the one, that's maybe more supported. The problem is that there is testimony there was shooting, then there is testimony that the victim ran, then there was another shot, which clearly at that point there can't be an legal provocation for that.

There's nothing there. I mean, I've got to fabricate some basis that there is a reason to shoot somebody when they are running away. I don't think that exists.

(App. 273–77).

The trial court's denial also proves sound, as the only evidence of any argument[2] within the trial record derives from one eyewitness' (Greene's) statement: "They argued for a second and the guy tried to run" (app. 112).  The evidence at trial otherwise

---

[2]Manslaughter is defined by South Carolina law as "the unlawful killing of another without malice, express or implied." S.C. Code Ann. § 16-3-50.  The PCR transcript reveals that the petitioner turned down a plea bargain, which would have involved a guilty plea to voluntary manslaughter and a prison sentence of twenty-five years (app. 415–16).  At the PCR hearing, the petitioner, however, testified that the sentence offered in the plea bargain was thirty years, not twenty-five years (app. 430–31).

overwhelmingly indicated the petitioner shot the victim with malice and without sufficient legal provocation, especially in light of eyewitness testimony that the victim was retreating while the petitioner "was just running and shooting the gun at the same time" (app. 209). That eyewitness, Bates, sat inside a vehicle at the scene and watched the victim "coming by the side of the car and that's when I looked and I saw another guy, with a gun, and he was shooting a gun at Sheldon"(*id.*).   The eyewitnesses who testified at trial also later identified the petitioner as the perpetrator (app. 113, 175, 220).   No gunshot residue was found on the victim; the remainder of testimony showed the victim was not armed (app. 193).   Further, testimony from law enforcement documented bullet holes in neighboring mobile homes, indicating that the petitioner fired multiple bullets at an angle across the street from the trailer (app. 141–43).  Also, a business card found in a car connected to the petitioner's arrival at the crime scene bore the petitioner's nickname "Nitty" and the location of his car cleaning business (app. 167–69).

The PCR court's finding that trial counsel did seek the petitioner's requested jury instruction is supported by the record.  Thus, the petitioner cannot show that the denial of relief on this ground was based upon an unreasonable determination of the facts or an unreasonable application of federal law.  The petitioner has made no showing to discount these findings, and he has not shown how he was prejudiced.

In any event, as the trial transcript shows, after the petitioner's trial counsel requested the manslaughter instruction, the trial judge expressed his reluctance to give a voluntary manslaughter instruction (app. 273–77).[3]   *See Epps v. Bodison*, C.A. No.

---

[3]As earlier stated, the petitioner did not testify at trial.  Although the petitioner did not testify at trial, the trial judge concluded that the petitioner's position at trial was that he was not the shooter:

> THE COURT: I just don't – I guess I will become the judge that makes the greatest law on voluntary manslaughter but I just don't believe that it is there in this case.

(continued...)

8:08-2476-TLW-BHH, 2009 WL 960792, at *8 (D.S.C. Apr. 8, 2009) ("Here, the evidence does not support a voluntary manslaughter charge. An eyewitness testified that the petitioner shot the victim and the victim and the petitioner were not arguing immediately before the shooting.  The petitioner did not testify or present any witnesses.  Additionally, the petitioner's defense was that although he was present at the scene, he was not the shooter.  There is no evidence in the record from which an inference can be drawn that there was a struggle or heat of passion killing which would have supported a charge of voluntary manslaughter.") (citations to transcript omitted).

Moreover, the State then expressly opposed the voluntary  manslaughter instruction requested by the petitioner's trial counsel (app. 276–77).  The trial court denied the requested instruction, but noted on the record the request by petitioner's trial counsel for a voluntary manslaughter instruction (app. 277).  The trial judge's denial of a voluntary manslaughter instruction was consistent with South Carolina statutory law and case law. *State v. Starnes*, 698 S.E.2d 604, 608 (S.C. 2010) ("To warrant the court eliminating the charge of manslaughter, there must be no evidence whatsoever tending to reduce the crime from murder to manslaughter.  If there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed, the defendant is entitled to such charge.") (citations omitted); *State v. Blurton*, 573 S.E.2d 802, 804 (S.C. 2002) ("If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the

---

(...continued)

> I don't quarrel with you that there are factors that may form the basis for a voluntary manslaughter charge.  The problem that I have, from the State's perspective, I don't have any because the position that the Defendant has taken is "I am not the shooter.  I didn't have any discussion. I didn't have any argument."

(App. 276)

jury."); and *State v. Moultrie*, 257 S.E.2d 730, 731 (S.C. 1979) ("An instruction should not be given unless justified by the evidence.").

The petitioner has not shown that the state court's analysis of the manslaughter charge issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable application of federal law.  *See Williams v. Taylor*, 529 U.S. 362, 410 (2000); and *White v. Woodall*,134 S.Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted).

The Supreme Court of the United States has held that in capital cases, due process requires a trial court to instruct a jury on lesser-included offenses, if the evidence warrants such a charge. *Beck v. Alabama*, 447 U.S. 625, 637–38 (1980).  The Supreme Court of the United States, however, has not extended the rule in *Beck* to non-capital murder cases, such as the petitioner's trial.  Additionally, the United States Court of Appeals for the Fourth Circuit has not addressed the issue in a published case.  *See Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 792–93 (D.S.C. 2010) ("The Fourth Circuit has not, in a published opinion, addressed the question of whether due process requires that a trial court instruct a jury on lesser included offenses in non-capital cases."), *appeal dismissed*, *Stewart v. Bodison*, No. 10-6750, 412 F. App'x 633 (4th Cir. Feb. 17, 2011).

Even so, our Court of Appeals has noted that "'[a] defendant is not entitled to have the jury instructed as to lesser degrees of the crime simply because the crime charged is murder.'" *Bates v. Lee*, 308 F.3d 411, 418 (4th Cir. 2002) (capital case wherein the defendant sought an instruction for a lesser included offense of second degree murder). The United States Court of Appeals for the Second Circuit, however, has held that a state trial court's failure to give a manslaughter instruction in a non-capital murder case cannot be a basis for the grant of federal habeas corpus relief.  *Jones v. Hoffman*, 86 F.3d 46, 48

13

(2nd Cir. 1996) (holding that "[s]ince a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," the court was precluded from considering the issue in a habeas petition) (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

Although *Jones v. Hoffman* is not binding in this circuit, this district court has noted that the United States Court of Appeals for the Fourth Circuit, citing *Jones v. Hoffman*, has held, in an unpublished opinion, that instructions for lesser included offenses are not constitutionally required in state court criminal cases. *Stewart*, 701 F. Supp. 2d at 793 (citing *Robinson v. North Carolina Atty. Gen.*, No. 99-7530, 2000 WL 1793060, at *1 (4th Cir. Dec. 7, 2000)). In *Robinson*, the Fourth Circuit found as follows:

> Robinson was convicted of felony larceny and other offenses. He asserts that the trial court was constitutionally required to instruct the jury about misdemeanor larceny, a lesser-included offense of felony larceny. As Robinson concedes, however, the Supreme Court has never held that due process requires lesser-included instructions in non-capital state trials. *See Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980) (expressly reserving this issue). Moreover, a review of decisions from other courts of appeals establishes that there is no consensus on this question. Consequently, a decision in Robinson's favor would require the enunciation and retroactive application of a new rule, in violation of § 2254(d)(1) and *Teague v. Lane*, 489 U.S. 288 (1989). *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996) (holding that lesser-included claim was Teague-barred); *Ramdass v. Angelone*, 187 F.3d 396, 406 (4th Cir. 1999) (noting that § 2254(d)(1)'s retroactivity limitation is more stringent than Teague's), *aff'd*, 120 S.Ct. 2113 (2000). Accordingly, we affirm the district court's order denying relief on this claim.

2000 WL 1793060, at *1.

In non-capital cases, a trial court's refusal to instruct the jury on manslaughter as a lesser-included offense of murder cannot form the basis for habeas relief. *See Stewart*, 701 F. Supp. 2d at 793 ("Accordingly, this Court declines to find that due process requires an involuntary manslaughter instruction in this case. Thus, the Court finds that the

state court's decision not to charge on the lesser offense of involuntary manslaughter was not contrary to nor an unreasonable application of clearly established Federal law as decided by the United States Supreme Court, and the Court rejects the Petitioner's claim."), (citing, *inter alia*, *Cobbs v. McCall*, C.A. No. 6:09-528-CMC-WMC, 2010 WL 936782, at *3 (D.S.C. Mar. 16, 2010) ("Accordingly, this Court declines to find that due process requires an involuntary manslaughter instruction in this case.  Thus, the Court finds that the state court's decision not to charge on the lesser offense of involuntary manslaughter was not contrary to nor an unreasonable application of clearly established Federal law as decided by the United States Supreme Court, and the Court rejects the Petitioner's claim."); *cf*. *Bates*, 308 F.3d at 418 ("'The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge.'").  In light of the aforementioned cases and the absence of a decision from the Supreme Court of the United States on instructions for lesser included offenses in non-capital cases, it cannot be said that the PCR court violated clearly established federal law as decided by the Supreme Court of the United States.    *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) ("it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying the AEDPA standard of review").

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 20) be granted.  It is also recommended that the district court deny a certificate of appealability.  The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald<br>
United States Magistrate Judge

August 13, 2015
Greenville, South Carolina

15

**Notice of Right to File Objections to Report and Recommendation**

   The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

   Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

   **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).